IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32063-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMEL W. DALLUGE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Amel Dalluge appeals the result of a *Dillenburg*[1] hearing that

this court ordered to remedy the failure years earlier to conduct a decline hearing before

transferring criminal charges against Mr. Dalluge to adult court. The superior court

concluded that the juvenile court would have declined jurisdiction of property crime

charges filed against Mr. Dalluge in 1998. As a result, his 1998 conviction of those

charges in adult court stands.

Mr. Dalluge, who represented himself in the hearing, argues that the superior court

improperly allowed him to focus on legal challenges and to stipulate that the factual

factors to be considered in declining jurisdiction would have been satisfied. He asks us to

---

[1] *Dillenburg v. Maxwell*, 70 Wn.2d 331, 413 P.2d 940 (1966), *modified on reh'g*, 422 P.2d 783 (1967) (court must hold a retroactive decline hearing when a juvenile is tried in adult court without a decline hearing).

apply the protection against improvident waiver that we would accord to a juvenile facing criminal prosecution.

As a 33-year-old seeking relief from convictions, Mr. Dalluge stands on a different footing than a juvenile faced with criminal prosecution. He made a knowing and voluntary stipulation to facts on which the superior court reasonably relied. For that reason, and because the superior court made all necessary findings, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### Prior Matters

We first recount events dating back almost 20 years that led to the outcome of the July 2013 hearing challenged in this appeal. The following history is largely drawn from this court's Order Returning Personal Restraint Petition to Superior Court and Closing Petition in Court of Appeals, *In re Pers. Restraint of Dalluge*, No. 29256-8-III (Wash. Ct. App., Jun. 8, 2011).

In September 1997, then 17-year-old Amel Dalluge was charged with first degree rape. On March 2, the State amended the information in the rape case to one count of rape in the second degree and one count of rape in the third degree, or in the alternative, two counts of third degree rape.

While evading apprehension for the rape charges, Mr. Dalluge committed property crimes in November 1997. He was charged with burglary in the second degree, theft in the second degree, and vehicle prowling in the second degree on January 16, 1998.

2

The property crime charges proceeded to trial before the rape charges, and on March 5, 1998, Mr. Dalluge was convicted of the property crimes in adult court. On March 30, he was convicted of two counts of rape in the third degree in adult court.

Both of Mr. Dalluge's cases were properly in adult court before March 2, 1998, because the charge of first degree rape (a serious violent offense) subjected him to automatic juvenile court declination and exclusive adult court jurisdiction. RCW 13.04.030(1)(e)(v)(A). On account of that automatic declination, he was no longer considered a juvenile for purposes of the subsequent property crimes and the adult court had sole jurisdiction over those proceedings as well. *See* RCW 13.40.020(15); *State v. Sharon*, 100 Wn.2d 230, 231, 668 P.2d 584 (1983).

But when the information was amended to reduce the rape charges, Mr. Dalluge was no longer charged with a serious violent offense and the case no longer qualified for automatic declination of juvenile court jurisdiction. In response to a personal restraint petition filed by Mr. Dalluge challenging his rape convictions, our Supreme Court ruled that with the reduction of charges, the trial court should have remanded the rape charges to the juvenile court for a decline hearing. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 783, 100 P.3d 279 (2004). Since Mr. Dalluge's petition was not barred as untimely given the jurisdictional error, the remedy ordered was to remand to adult criminal court for a de novo *Dillenburg* hearing on whether declination would have been appropriate.

3

On remand, the superior court conducted a *Dillenburg* hearing and concluded Mr.

Dalluge would have been declined from juvenile jurisdiction to the adult system.

In a personal restraint petition filed with this court in 2010, Mr. Dalluge raised the

same infirmity with his property crime convictions that he earlier raised and addressed

with the rape convictions. Here again, Mr. Dalluge's petition was not barred as untimely,

given the jurisdictional error. This court rejected the State's argument that the outcome

of the *Dillenburg* hearing on the rape charges controlled whether juvenile court

jurisdiction would have been declined as to the lesser property charges. The remedy

ordered was to again remand to the superior court for a *Dillenburg* hearing to determine,

this time, whether declination of jurisdiction over the property crime charges would have

been appropriate.

Proceedings Following Remand

In November 2011, at the request of Mr. Dalluge, the trial court appointed a

lawyer to represent him. Mr. Dalluge later reported "political" disagreements and

conflicts with the lawyer, Robert Kentner, whom Mr. Dalluge also accused of being

nonresponsive. Mr. Dalluge eventually asked to represent himself.

Among Mr. Dalluge's reasons for wishing to represent himself were that Mr.

Kentner wanted to argue that the eight factors identified by the United States Supreme

Court in *Kent v. United States*, 383 U.S. 541, 566-67, 86 S. Ct. 1045, 16 L. Ed. 2d 84

(1966) as bearing on whether declination is appropriate[2] did not support declination in

Mr. Dalluge's case. Mr. Dalluge preferred to attack the constitutionality of the

*Dillenburg* hearing. Mr. Dalluge was familiar with the *Kent* factors from his prior

*Dillenburg* hearing. *See State v. Dalluge*, noted at 148 Wn. App. 1004, 2009 WL 73138,

*3-*9.[3]

Aware of Mr. Dalluge's difficulties in working with Mr. Kentner, the court

decided to proceed with the expectation that Mr. Dalluge would represent himself. In

reaching its decision, the court observed that Mr. Dalluge had previously participated in a

---

[2] The eight factors identified by *Kent*, 383 U.S. at 566-67, are:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires [declination].
2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.
3. Whether the alleged offense was against persons or against property . . . .
4. The prosecutive merit of the complaint . . . .
5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults . . . .
6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.
7. The record and previous history of the juvenile . . . .
8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

[3] Although the 2009 opinion was unpublished, we cite it not as authority but for its historical relation to this case. *See* GR 14.1(a).

*Dillenburg* hearing; had made clear that he had the ability to read and understand the law; and was not before the court as a criminal defendant but instead as the moving party seeking relief from convictions. The court ordered Mr. Kentner to remain standby counsel, to assist and to step in if needed.

At a hearing on May 7, 2013, the court signed an order documenting the self-representation and standby counsel arrangement and also granted Mr. Dalluge's request to continue the *Dillenburg* hearing to give him more time to prepare. In response to the State's expression of concern about time and witness availability, Mr. Dalluge told the court:

> I'm going to do what I can—in my direction in the case is I'm going to waive the <u>Kent</u> factors, just so, you know, the state, you know, has—has no basis, I guess, to have the witnesses hanging [out] any more—she can let them go. 'Cause I'm going to write it up and waive that.
> And as I was trying to tell stand-by counsel, I—I don't see any reason for a factual defense and I'd rather go on a legal defense.
> And I was going to do that, you know, as that would save judicial resources and expedite the proceedings.

Report of Proceedings (RP) at 68-69. The court responded, "Okay. Well, then, you work on what you want to propose as a stipulation with the [S]tate, and if you need the assistance of Mr. Kentner in getting things back and forth, or wording, or whatever, he's there [as] your standby." *Id.* at 69.

The *Dillenburg* hearing was continued to July 24. Mr. Dalluge submitted briefing on his "law based defense." Clerk's Papers (CP) at 110-27, 129-30.

6

A substantial part of the *Dillenburg* hearing was consumed by a discussion—

principally between the court and Mr. Dalluge—about Mr. Dalluge's desire to "waiv[e]

the challeng[e]of the Kent factors and mov[e] on to the second part of Dillenburg,"

challenging the constitutionality of the hearing. RP at 75. Since what was invited and

agreed by Mr. Dalluge is at the heart of this appeal, we reproduce substantial portions of

the discussion.

It began with the prosecutor expressing her concern about whether the parties were

addressing "Mr. Dalluge's issues or . . . the Kent factors," reminding the court that Mr.

Dalluge said he was waiving the factors but that she so far had no written stipulation. RP

at 74. She argued, "[I]f [it's] true [he's going to stipulate to the *Kent* factors] I'd like to

have something in writing signed by the parties for the file." RP at 74-75.

The following dialogue ensued:

> DEFENDANT: . . . It wasn't stipulating to nothing; it was
> waiving—waiving the challenging of the Kent factors and moving on to the
> second part of Dillenburg, challenging under constitutional rights.
> THE COURT: Okay.
> Mr. Dalluge, I was trying to recreate the representations that you
> made from the clerk's minutes and I'm having some difficulty doing that.
> When you say that you—waived the Kent factors, or what—I may
> misstate your language—what exactly did you intend in that regard?
> DEFENDANT: As in Dillenburg, it has—I can—I can wait 'til after
> the Kent factors and that's how Dillenburg lays it out, is after we do the
> Kent factors I can argue, you know, "Hey, this is unconstitutional for these
> reasons." But I find that—because we already have the first hearing we can
> use that and I can demonstrate any unconstitutionally from that [sic]. So I
> feel it may be more efficient for this court, and a preservation of judicial

7

resources, if we just skip that and move on to the challenging of the unconstitutionality of it.

        THE COURT: Okay. So let me ask it in—in very specific terms.

        Do you stipulate that a consideration of the <u>Kent</u> factors in this case would result in a decline of juvenile court jurisdiction?

        DEFENDANT: I believe that—that that's—that's going beyond—is with the waiver I'm—I guess I'm trying to stay away from that. Is—is you know, I'm not going to come back on—on appeal—I see where you're coming from, but if I do that I guess I'd be admitting defeat, and— . . .

    . . . .

        . . . I don't think I would have to go that far and that's why I'm staying away from stipulation and going more towards waiver—just—.

RP at 75-77 (alteration in original).

In order to determine how to proceed, the superior court explained to Mr. Dalluge that the Court of Appeals had remanded the cause for a *Dillenburg* hearing, reviewing what that entails.

        THE COURT: . . . That court says that we're required to conduct a hearing, a <u>Dillenburg</u> hearing, in which the court considers the <u>Kent</u> factors to determine whether or not, had it been timely, decline would have been ordered, to decline juvenile court jurisdiction in this case.

        You want to add to that consideration some legal arguments based on the constitutionality of this proceeding, and I'm totally comfortable with that. But the question is, what do we do with the first part of the hearing that the Court of Appeals has ordered us to conduct.

        If you—If you are waiving that, saying, "No, Judge, you don't have to do that part," I don't think you have authority to do that. If you are stipulating that the <u>Kent</u> factors, without the constitutional considerations, the <u>Kent</u> factors alone, would have resulted in decline, then we can proceed to your constitutional argument.

RP at 77-78. The court clearly told Mr. Dalluge that "the <u>Kent</u> factors have to be applied in regard to the specific charges." RP at 80.

8

Following the court's explanation, Mr. Dalluge acceded to the court's position that it would not forgo review of the *Kent* factors unless Mr. Dalluge was stipulating that the juvenile court's consideration of the *Kent* factors in 1998 would have resulted in declination. Since Mr. Dalluge still stated that he preferred "waiver" to "stipulation," the court sought to confirm, and did confirm, that Mr. Dalluge did not believe a "waiver" would preserve review of the *Kent* factors for another day. The court inquired:

> THE COURT: . . . If the court allowed you to waive the <u>Kent</u> factors and not stipulate, if we then had a hearing on your legal defenses, your constitutional claims and so on, and if this court decided against you on the legal claims, where do you think you would be in regard to the finality of—of the judgment and sentence in this case?
>
> DEFENDANT: It would be a matter, I guess, for the Court of Appeals.
>
> THE COURT: On the legal issues.
>
> DEFENDANT: Yeah. Not—not—not—going into the waiver or the stipulation; it would be merely, as I'm saying, the constitutionality of it.
>
> THE COURT: Okay—
>
> DEFENDANT: It would be strictly towards that.
>
> THE COURT: And—And if, after full legal appeals and so on, you did not prevail on the legal defenses, and the constitutional argument, would you then expect that at some point the court would have to conduct a hearing in regard to the <u>Kent</u> factors?
>
> DEFENDANT: That would not be honorable. No.
>
> THE COURT: Okay.
>
> So, under these circumstances I understand Mr. Dalluge essentially to stipulate. I honor for the record his attempt to distinguish between a waiver and a stipulation. But I understand him to stipulate that the—the <u>Kent</u> factors alone would result in declination of juvenile court jurisdiction in this case—Or, in the context of a <u>Dillenburg</u> hearing, would have resulted in declination.

RP at 81-82.

9

The court continued with the remaining issues and at the conclusion of the hearing, took the matter under advisement pending supplemental briefing. But it also entered an order setting forth the parties' stipulation and other matters; in relevant part, the order states that "[t]he parties stipulate that an application of the factors identified in *Kent v. United States* would, without consideration of Defendant's constitutional arguments and legal defenses, result in declination of juvenile court jurisdiction in this cause." CP at 131-32 (citation omitted). The court asked Mr. Dalluge if he had any issues with the form of the order and Mr. Dalluge answered, "No, I don't, your Honor." RP at 91. Once prepared, Mr. Dalluge signed the order, indicating, as the prosecutor did, "Copy received and approved for entry." CP at 132.

Following the hearing, the State filed a response brief and Mr. Dalluge filed his reply. The court issued a written memorandum concluding that Mr. Dalluge's legal defenses to the *Dillenburg* hearing were without merit. It also stated:

> The court concludes, on the parties' stipulation, that application of the legal standards for declination of juvenile court jurisdiction, had they been addressed prior to adult division proceedings in this case, would have resulted in declination.

CP at 160. It therefore ruled that "the conviction in this case remains intact and no new trial is ordered." *Id.* Mr. Dalluge filed, and the court denied, a motion for reconsideration. Mr. Dalluge appeals.

10

ANALYSIS

Mr. Dalluge has accepted representation by counsel on appeal. His five assignments of error are variations on arguments that the trial court erred by accepting his stipulation and by failing to make necessary and adequately supported findings, including that declination of juvenile jurisdiction was in Mr. Dalluge's or the public's best interest.

As aptly summarized by the superior court:

> A *Dillenburg* hearing is ordered when a matter has been prosecuted to conviction in Superior Court without a legally-required declination hearing in juvenile court. The hearing is intended to answer this question: if the court had conducted a declination hearing before the adult court prosecution, applying the factors identified in *Kent v. United States*, would the juvenile court have declined jurisdiction? If the answer is "yes," the adult court conviction stands; if "no," the conviction is vacated and a new trial ordered.

CP at 158 (emphasis omitted) (citation omitted). The State was required to show that declination would have been appropriate in 1998 by a preponderance of the evidence. *Cf. State v. H.O.*, 119 Wn. App. 549, 551, 81 P.3d 883 (2003) (decision to decline jurisdiction over a juvenile charged with a crime is subject to preponderance standard). This court reviews a decision to decline jurisdiction for abuse of discretion. *Id.* at 556.

*Failure to Consider* Kent *Factors*

Mr. Dalluge contends that the court abused its discretion when it failed to independently consider the *Kent* factors despite his request to waive them and his ultimate stipulation that they would have supported declination. In response, the State

11

argues that Mr. Dalluge is bound by his stipulation and alternatively that if error occurred, Mr. Dalluge invited it.

Mr. Dalluge cites no case law holding that a competent adult—and Mr. Dalluge was 33 years old at the time of the *Dillenburg* hearing—cannot stipulate to facts at such a hearing. He relies instead on cases holding that juveniles cannot waive a decline hearing and that the juvenile court must independently consider the *Kent* factors in deciding whether declination is in the best interest of the juvenile or the public. The questions addressed at a timely decline hearing for a juvenile and a *Dillenburg* hearing, often involving an adult, are similar but not identical. A decline hearing is conducted in accordance with statute while a *Dillenburg* hearing is conducted as prescribed by the *Dillenburg* decision. The ramifications of the two proceedings are vastly different.

As explained by our Supreme Court in *State v. Saenz*, 175 Wn.2d 167, 174, 283 P.3d 1094 (2012), when a juvenile facing criminal prosecution waives juvenile court jurisdiction

> he or she also waives the increased protections of the juvenile justice system, exiting a system designed to rehabilitate and entering a system designed to punish. This exit is a one-way street with no return: by waiving juvenile jurisdiction once, the juvenile enters the adult system permanently, forfeiting the right to be tried in juvenile court for all future offenses. RCW 13.40.020(14); *State v. Sharon*, 100 Wn.2d 230, 231, 668 P.2d 584 (1983). Thus, moving a case from juvenile court to adult court is "a 'critically important' action determining vitally important statutory rights of the juvenile." *Kent*, 383 U.S. at 556, (citing *Black v. United States*, 122 U.S. App. D.C. 393, 355 F.2d 104, 105 (1965)).

12

By contrast, an adult being provided retroactive relief through a *Dillenburg* hearing has already been prosecuted in adult court. The adult is making a motion for relief. He or she faces at best, the vacating of the conviction and a new trial (in adult court), and at worst, that the conviction will stand. Where an adult can choose whether or not to even request a *Dillenburg* hearing, we see no reason why he or she cannot knowingly and voluntarily stipulate to facts for reasons like those Mr. Dalluge identified: to "save judicial resources and expedite the proceedings." RP at 68-69.

Even in a criminal trial, a defendant's stipulation to facts—even to elements of a crime—do not need to be accompanied by a colloquy on the record between the defendant and the trial court. *State v. Humphries*, 181 Wn.2d 708, 715, 336 P.3d 1121 (2014). "[R]equiring trial courts to question defendants personally as to the voluntariness of every stipulation would 'needlessly delay and confuse the conduct of a typical trial.'" *Id.* (quoting *U.S. v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir. 1980)). Instead, when a stipulation is agreed to by a defendant's attorney in the presence of the defendant, the trial court may presume that the defendant consents, unless the defendant objects at the time the stipulation is made.

Here, of course, Mr. Dalluge *personally* agreed to the stipulation. He did so after the benefit of a colloquy with the trial court. He does not raise any challenge on appeal to his knowing, voluntary, and intelligent decision to represent himself.

13

The invited error doctrine would provide another basis for affirming the superior

court notwithstanding its acceptance of Mr. Dalluge's stipulation, even if it were error.

The doctrine is applicable when a party "'takes affirmative and voluntary action that

induces the trial court to take an action that party later challenges on appeal.'" *Hymas v.*

*UAP Distrib., Inc.*, 167 Wn. App. 136, 148, 272 P.3d 889 (2012) (quoting *Lavigne v.*

*Chase, Haskell, Hayes & Kalamon, PS*, 112 Wn. App. 677, 681, 50 P.3d 306 (2002)). It

was Mr. Dalluge who asked, and persisted in his request, *not* to address the *Kent* factors.

Because we find no error, however, we need not address invited error further.

### Failure to Enter Findings

Mr. Dalluge also assigns error to the trial court's failure to enter a written finding

that transfer to adult court was in the best interest of the juvenile or the public, which he

contends was required by RCW 13.40.110(4). He argues that "[a] transfer of juvenile

jurisdiction to adult court is not valid until the juvenile court has fulfilled its solemn

responsibility to independently determine that a decline of jurisdiction is in the best

interest of the juvenile or the public and entered written findings to that effect before

transferring the case." *Saenz*, 175 Wn.2d at 179.

Here, however, the superior court was not going to be transferring jurisdiction of

Mr. Dalluge's charges to adult court. It was not conducting a decline hearing under

RCW 13.40.110. It was conducting a different sort of hearing, required by court order

and to be conducted in accordance with the procedure prescribed by *Dillenburg*. The

14

*Dillenburg* procedure is not identical to a decline hearing. While the statutes providing for decline hearings inform the court's task, the *Dillenburg* decision requires different findings and a different result.

*Dillenburg* requires "a de novo hearing before the superior court as to the propriety of the challenged transfer, i.e., whether the facts before the juvenile 'session' of the superior court in the first instance warranted and justified the transfer for criminal prosecution." *Dillenburg*, 70 Wn.2d at 355. At the conclusion of the hearing, *Dillenburg* requires only that the court "make findings of fact and conclusions of law relative to any relevant and disputed issue between the prosecuting officials and the convicted person." *Id.* "In the event it be determined, as a result of such hearing, that the initiating juvenile court transfer for criminal prosecution was appropriate under all of the circumstances, then the challenged conviction will stand unless intervening events have so prejudiced the constitutional rights of the convicted person as to compel a different result." *Id.*

These are the requirements of *Dillenburg*, and the superior court's decision satisfied them. The court concluded, based on the parties' stipulation, that the facts would have warranted and justified the transfer for criminal prosecution. It was not required to make findings or conclusions on relevant and disputed issues other than the parties' legal disputes, because there were no others. It ruled that the conviction would stand. There were no findings or conclusions required of a *Dillenburg* hearing that the court failed to make.

15

No. 32063-4-III
*State v. Dalluge*

### STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Dalluge argues that he is unable to raise any meritorious issues for the court to review because he was not provided adequate access to the prison's law library. The State responds that it is unable to ascertain the nature or occurrence of any error and is unable to adequately respond. We, too, are unable to consider a matter as to which evidence is outside the record. *See State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). A personal restraint petition is the appropriate vehicle for bringing such a matter before the court.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Lawrence-Berrey, J.

16